J-A06005-26          2026 PA Super 182

MICHELE MCGUIRE AND SEAN          :     IN THE SUPERIOR COURT OF
MCGUIRE                           :          PENNSYLVANIA
                                  :
          Appellants              :
                                  :
                                  :
                                  :
          v.                      :
                                  :
                                  :     No. 1276 WDA 2025
JOSHUA A. LUCCHINO                :
          v.                      :
                                  :
                                  :
ARIN T. YEAGER                    :

Appeal from the Order Dated September 16, 2025
In the Court of Common Pleas of Allegheny County Family Court at
No(s): FD-16-008562

BEFORE: OLSON, J., MURRAY, J., and BECK, J.

OPINION BY OLSON, J.:                    **FILED: AUGUST 12, 2026**

Appellants, Michele and Sean McGuire,[1] appeal from an order entered on September 19, 2025, which sustained preliminary objections and dismissed their complaint for partial child custody of Z.L. (Child), a male born in November 2015. After careful consideration, we affirm.

We briefly summarize the facts and procedural history of this case as follows. On August 2, 2016, Child's biological mother, Arin T. Yeager (Mother), filed a complaint for primary physical custody of Child against Child's biological father, Joshua A. Lucchino (Father). On October 31, 2016, after

_____

[1]  "Michele McGuire is the … Paternal Grandmother of [C]hild. …. Sean McGuire, [has been] the husband of Paternal Grandmother for the last 12 years" and has been Child's Step-Grandfather "since the day [Child] was born." Appellants' Brief at 11. We refer to the parties individually as "Grandmother" and "Step-Grandfather" but collectively as "Appellants."

receiving notification of Mother's intent to withdraw her custody claims, Father consented to the withdrawal. By order entered on October 31, 2016, the trial court directed Mother's complaint for custody to be withdrawn. Approximately seven months later, on May 24, 2017, Mother obtained a temporary order for Protection from Abuse (PFA order) against Father, for both herself and Child. On June 29, 2019, the trial court entered a final PFA order, with Mother's and Father's consent, that contained a provision permitting Father to have supervised visitation with Child. That final PFA order was in effect for three years, or until June 29, 2022. After the expiration of the final PFA order, there were no further custody actions taken by Mother or Father.

On May 7, 2025, Appellants filed a complaint for partial custody of Child. Therein, Appellants alleged that following an argument in late 2024, Mother forbid Child to have contact or spend weekends with them, as previously permitted. On May 30, 2025, Mother filed preliminary objections to the custody complaint, arguing that Appellants lacked standing pursuant to 23 Pa.C.S.A. § 5325. Separately, Mother asserted that Step-Grandfather lacked standing because he was not a biological relative of Child.[2]

More specifically, and at issue herein, Section 5325 currently provides in pertinent part:

---

[2] As we shall explain below, Step-Grandfather's custody claim has been abandoned. *See* Appellant's Brief at 18, fn. 1.

- 2 -

**§ 5325. Standing for partial physical custody and supervised physical custody**

In addition to situations set forth in section 5324 (relating to standing for any form of physical custody or legal custody), grandparents and great-grandparents may file an action under this chapter for partial physical custody or supervised physical custody in the following situations:

\*      \*      \*

(2) where the relationship with the child began either with the consent of a parent of the child or under a court order and where the parents of the child:

> (i) have commenced a proceeding for custody; and

> (ii) do not agree as to whether the grandparents or great-grandparents should have custody under this section[.]

23 Pa.C.S.A. § 5325.

On June 9, 2025, Appellants filed a response to Mother's preliminary objections. Following hearings held on July 3, 2025, and September 4, 2025, the trial court dismissed Appellants' complaint for custody by order entered on September 16, 2025. Therein, the trial court noted that the parties agreed that Child's relationship with Appellants began with Mother's consent. However, the trial court determined that "there [was] no qualifying custody proceeding that would entitle [Appellants] to proceed with their custody" claim, reasoning:

> There was a custody complaint filed by [Mother] against [Father in 2016]. However, it was later withdrawn with [Mother's] consent. There was also a custody provision ordered as part of a PFA proceeding between [Child's] parents on June 29th, 2017. That PFA expired on June 29th, 2019. **There is currently no custody proceeding pending by either parent.**

*     *     *

     [Because no custody proceeding is currently pending between Child's parents, Appellants] have not met the first prong of Section [5325(2)].  As a result, their [c]omplaint must be dismissed.

Trial Court Order, 9/16/2025, at *2-3 (unpaginated) (emphasis added), ¶ III(a)-(c). Additionally, the trial court "agree[d] with [Mother's] claim that [Step-Grandfather did] not have standing in this matter" because he was not biologically related to Child, but the trial court explained that "the issue was largely moot because the matter [was] dismissed" for lack of standing as detailed above.  *Id.* at *3, ¶ III(d).

     In its subsequent opinion under Pa.R.A.P. 1925(a), the trial court looked at the plain, statutory language of Section 5325(2)(i), *to wit* "have commenced a proceeding for custody," found that the legislature used the present verb tense, and concluded that Appellants "did not meet 23 Pa.C.S.A. §5325(2)(i) because the prior custody proceeding and PFA proceedings were not currently pending."  Trial Court Opinion, 11/3/2025, at *7 (unpaginated); *see also id.* at *6 ("[T]here is not presently a qualifying custody proceeding. [T]he only custody proceedings in this matter have either expired or been withdrawn."); *see also id.* at *5 ("[T]here is no pending custody action between the legal parents of [Child].  The first custody action was withdrawn

- 4 -

nearly a decade ago, and the most recent one expired with the PFA [order] almost six years ago."). This timely appeal resulted.[3]

On appeal, Appellants present the following issue for our review:

Whether the trial court erred in determining that no qualifying custody proceeding existed under 23 Pa.C.S.[A.] § 5325(2), thus sustaining Mother's preliminary objections and dismissing [Appellants'] custody case, although the record reflects that custody proceedings between [C]hild's parents commenced?

Appellants' Brief at 11.

Appellants argue that the trial court misinterpreted the statutory language of Section 5325(2) to conclude that Grandmother[4] lacked standing because there was no custody proceeding pending by either parent at the time

_____

[3] On October 3, 2025, Appellants filed a timely notice of appeal and concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i). The trial court filed an opinion pursuant to Pa.R.A.P. 1925(a) on November 3, 2025.

[4] The trial court noted that "Section 5325 is clear and unambiguous. If the legislature wanted the statute to extend to step-grandparents, it would have included step-grandparents in the list of people who are eligible to bring an action under this provision." Trial Court Opinion, 11/3/2025, at *8 (unpaginated). Presently, as noted above, "Grandmother agrees [Step-Grandfather] is not the biological paternal grandparent and will focus her [appellate] brief on the other issues." Appellants' Brief at 18, n.1. Because Appellants abandon their standing argument with regard to Step-Grandfather, we affirm the trial court's order entered on September 16, 2025, dismissing the complaint for custody as it pertains to him. *See Commonwealth v. Vega*, 754 A.2d 714, 719 (Pa. Super. 2000) ("This [C]ourt will not assume the role of advocate for an appellant when the issues in his brief are improperly raised and undeveloped or abandoned, lack support in the record, and are presented without reference to legal authority."); *see also Commonwealth v. Rodgers*, 605 A.2d 1228, 1239 (Pa. Super. 1992) (This Court will consider an issue abandoned where an appellant has identified the claim on appeal, but failed to develop it in his appellate brief.)

Appellants filed their custody complaint. Appellants claim "[t]he record is clear that custody proceedings commenced between the parents in this case, thus Section 5325(2)(i) [was] met." *Id.* at 16-17. More specifically, Appellants posit "a [parental] custody proceeding was commenced when Mother filed for custody in 2016, and there was a 3-year PFA [order filed by Mother] in place that contained custody provisions." *Id.* at 21. Appellants maintain that the trial court erred in relying on the use of the present tense in Section 5325(2)(ii) to conclude that a parental custody proceeding must currently be pending before the court in order to find grandparent standing because "Section 5325(2)(ii) does not state that the [parental] custody action has to be commenced *and pending*." *Id.* at 21-23 (emphasis in original). Appellants contend that Section 5325(2)(ii) was amended in 2018 and previously permitted grandparent standing "where the parents of the child have been separated for a period of at least six months or have commenced and continued a proceeding to dissolve their marriage." *Id.* at 19, 21-22. Appellants assert that the amendment "eliminate[d] the relationship status of the parents as a factor" to establish grandparent standing and "[t]he legislature specifically left out the 'and continued' language in the rewrite of the statute." *Id.* at 20 and 22. Accordingly, Appellants argue in sum:

> In the instance case, the plain language of [Section] 5325(2)(i), "have commenced a proceeding for custody" is clear, explicit, and free from any ambiguity. The record is clear and undisputed that custody proceedings were commenced in this case. The trial court, however, interpret[ed] the language to mean that since the prior custody action was withdrawn, and the PFA matter expired,

that there is not "presently a qualifying custody proceeding." If [this] Court were to adopt the trial court's interpretation, it would mean that only in cases where custody proceedings are actively pending could grandparents seek partial custody. The trial court's interpretation of the statute goes beyond its plain [terms].

*Id.* at 25-26. Hence, "Grandmother [] requests [this] Court reverse the trial court's order and remand the case for further proceedings." *Id.* at 26.

"Our standard of review of an order of the trial court overruling or granting preliminary objections is to determine whether the trial court committed an error of law." *P.J.A. v. H.C.N.*, 156 A.3d 284, 287 (Pa. Super. 2017) (*per curiam*) (internal citation omitted). Likewise, "[t]hreshold issues of standing are questions of law; thus, our standard of review is *de novo* and our scope of review is plenary." *Raymond v. Raymond*, 279 A.3d 620, 627 (Pa. Super. 2022) (citations omitted). "Generally, the Child Custody Act does not permit third parties to seek custody of a child contrary to the wishes of that child's parents." *Id.* (citation omitted). As we have further stated:

The concept of standing is vital in ensuring that cases are presented to the court by an individual who has a genuine, and not merely a theoretical, interest in the matter. Thus, the traditional test for standing is that the proponent of the action must have a direct, substantial and immediate interest in the matter at hand.

\* \* \*

In the area of child custody, principles of standing have been applied with particular scrupulousness because they serve a dual purpose: not only to protect the interest of the court system by assuring that actions are litigated by appropriate parties, but also to prevent intrusion into the protected domain of the family by those who are merely strangers, however well-meaning.

*M.S. v. J.D.*, 215 A.3d 595, 598 (Pa. Super. 2019).  "The [Custody] Act[, however,] provides several exceptions to this rule, which apply primarily to grandparents and great-grandparents." *Raymond*, 279 A.3d at 627, *citing* 23 Pa.C.S.A. §§ 5324(3), 5325 ("Standing for partial physical custody and supervised physical custody.").

To resolve whether Grandmother has standing in this case, we must ascertain and effectuate the legislature's intent when it amended Section 5325 in 2018.  When interpreting a statute,

> we are constrained by the rules of statutory interpretation, particularly as found in the Statutory Construction Act. 1 Pa.C.S.A. §§ 1501–1991. The goal in interpreting any statute is to ascertain and effectuate the intention of the General Assembly. Our Supreme Court has stated that the plain language of a statute is in general the best indication of the legislative intent that gave rise to the statute.  When the language is clear, explicit, and free from any ambiguity, we discern intent from the language alone, and not from the arguments based on legislative history or "spirit" of the statute.  We must construe words and phrases in the statute according to their common and approved usage. We also must construe a statute in such a way as to give effect to all its provisions, if possible, thereby avoiding the need to label any provision as mere surplusage.
>
> Under Section 1921(c), the court resorts to considerations of "purpose" and "object" of the legislature when the words of a statute are not explicit.... Finally, it is presumed that the legislature did not intend an absurd or unreasonable result.  In this regard, we ... are permitted to examine the practical consequences of a particular interpretation.

*Raymond*, 279 A.3d at 629–630 (citation omitted).

The legislature's intent "can only be derived by reading all sections of the statute together and in conjunction with each other and construed with

- 8 -

reference to the entire statute." ***Holland ex re. Holland v. Marcy***, 817 A.2d 1082, 1085 (Pa. Super. 2002). Moreover, "the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable" and "intends the entire statute to be effective and certain." 1 Pa.C.S.A. § 1922(1)-(2).

As set forth above, Section 5325 provides that grandparents have standing and "may file an action … for partial physical custody and supervised physical custody" of their grandchildren "where the relationship with the child began … with the consent of a parent of the child … and where the parents of the child [] have commenced a proceeding for custody." 23 Pa.C.S.A. § 5325. In this case, there is no dispute that Grandmother's relationship with Child began with the consent of Mother. As such, the terms of the first portion of the statute have been met. Accordingly, we focus our analysis on the legislative intent of the statutory terms "where the parents of the child [] **have commenced** a proceeding for custody." ***Id.*** (emphasis added).

In this case, as detailed above, the trial court determined that the legislature intended the phrase in Section 5325, "where the parents **have commenced** a proceeding for custody," to mean "a **current**" or "a **pending** custody action between the legal parents" of Child. Trial Court Opinion, 11/3/2025, at *7 and 9 (unpaginated) (emphasis added). The trial court noted that Mother filed a custody action in 2016, but "both Mother and Father agreed to withdraw it on October 31, 2016" and, therefore, there was no current or pending parental custody action at the time that Appellants filed for

custody. *Id.* at *5. Moreover, the trial court noted that although Mother's "previously filed PFA order [] contained a custody provision[,] the custody provisions of a [PFA] are temporary [and] expire[d] when the PFA expire[d]" more than six years prior. *Id.* at *5 and 7. More specifically, the trial court determined that phrase "have commenced" is in "the present tense." *Id.* at *6. Here, the trial court recognized that although two potentially qualifying parental custody proceedings had been commenced in the past, those proceedings had "either expired or been withdrawn" and were not presently before it. *Id.*

The trial court found support for its interpretation in our decision in *Raymond, supra*, wherein we examined a different provision of the Custody Act, 23 Pa.C.S.A. 5324. *See* Trial Court Opinion, 11/3/2025, at *5-6. In *Raymond*, the maternal grandparents entered into a custody agreement with the adoptive parents for annual visitation with their five-year-old granddaughter. The adoptive mother subsequently died and when the adoptive father was diagnosed with, and later died from cancer, the maternal grandparents filed an emergency petition for custody. "In their complaint, the [maternal g]randparents sought standing [] under Section 5324(4) of the Child Custody Act, alleging that the [a]doptive [f]ather's illness prevented him from caring for the [c]hild." *Raymond*, 279 A.3d at 624. As this Court recounted in *Raymond*:

> In 2018, the Child Custody Act was amended to grant standing to another class of individuals. *See* 23 Pa.C.S.A. § 5324(4). Section

- 10 -

5324(4) provides that the following individuals may file for any form of physical or legal custody:

(4) [...] an individual who establishes by clear and convincing evidence all of the following:

(i) The individual has assumed or is willing to assume responsibility for the child.

(ii) The individual has a sustained, substantial and sincere interest in the welfare of the child. In determining whether the individual meets the requirements of this subparagraph, the court may consider, among other factors, the nature, quality, extent and length of the involvement by the individual in the child's life.

***(iii) Neither parent has any form of care and control of the child.***

23 Pa.C.S.A. § 5324(4) (emphasis added).

*Id*. at 627. "[T]he trial court [in ***Raymond***] determined that the [maternal g]randparents met the first two prongs of the statute, but failed to establish that '[n]either parent has any form of care and control of the child' under Section 5324(4)(iii)" because the adoptive father "exercised a posthumous 'form of care and control,'" when "he had selected Marcy Raymond (the Great-Aunt) to be the [c]hild's guardian upon his death." ***Id.*** at 623.

On appeal in ***Raymond***, our Court disagreed:

The trial court opined that [the a]doptive [f]ather's care and control of the child continued after his death. However, the statute uses the present tense to evaluate care and control: Neither parent ***has*** any form of care or control of the child. Thus, the question is whether either parent has, presently, at the time of the decision, any form of care or control of the child. We find the use of the present verb tense to be clear, explicit, and free from any ambiguity. Upon his death, it cannot be said that the [a]doptive [f]ather still has such control. We conclude the court's rationale does not comport with the plain reading of the statute.

- 11 -

*Id.* at 623 (internal citations, quotations, and footnote omitted; emphasis in original).

Ultimately, applying the rational of **Raymond**, the trial court herein determined that although there were prior custody proceedings between Child's parents in the past, those parental custody matters had concluded, having either expired or been withdrawn, by the time Grandparents sought custody.

Furthermore, the trial court herein found our judgment order in **G.P. v. M.O**., 2020 WL 914723 (February 25, 2020) persuasive, wherein:

> Father's parental rights were terminated on January 31, 2017. Paternal Grandfather filed a custody action on March 13, 2017; however, six months later, on September 14, 2017, Paternal Grandfather withdrew that action. Mother remarried and her husband (stepfather) adopted the minor children. Paternal Grandfather filed [a new custody] complaint on March 21, 2019. The trial court concluded that since no custody action between the legal parents of the minor children existed at that time, Paternal Grandfather lacked standing. Accordingly, the court dismissed the complaint. 23 Pa.C.S.A. § 5325(2). We [found] no error.

**G.P. v. M.O.**, 2020 WL 914723, at *1. Without much discussion of Section 5325, this Court affirmed, finding no error because the paternal grandfather in **G.P.** had "not alleged that the parents [] commenced a proceeding for custody, nor [had he] alleged that the parents [did] not agree as to whether he should have custody rights." *Id.* at *2.

Based upon the rules of statutory interpretation and our review, we agree with the trial court's assessment that Section 5325 is clearly and unambiguously written in the present tense and should be interpreted as such,

consistent with our prior decision in **Raymond**.  To the extent that the term "have commenced" could be considered ambiguous, we note the following.  As detailed above, principles of grandparent standing have been applied with particular scrupulousness to prevent intrusion into the protected family domain and the Child Custody Act does not generally permit third parties to seek custody of a child contrary to the wishes of that child's parents. This is readily apparent in the plain language of Section 5325. Even setting aside the provision at issue, the legislature also specifically included two additional requirements to establish grandparent standing pursuant to Section 5325 – proof of a preexisting relationship with the child and parental disagreement as to whether the grandparents should have custody.  **See** 23 Pa.C.S.A. § 5325(2)(ii).  Accordingly, it stands to reason that grandparent standing would also be proper only if there were a current parental custody dispute pending before the court, together with parental disagreement to the exercise of grandparent custody, at the time a grandparent initiates a custody proceeding.  We do not believe that the General Assembly intended for grandparents to disrupt a settled custody arrangement, especially when the custody dispute was terminated years earlier.  That would be an absurd and unreasonable result and, under our rules of statutory construction, we presume the legislature did not intend such a result.

Because a **pending** custody proceeding between the parents serves as a prerequisite to grandparent standing under Section 5325, we conclude that

the trial court did not err in sustaining Mother's preliminary objections to Appellant's complaint for custody.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 8/12/2026